IN THE UNITED STATES DISTRICT COURT FOR THE
NORTHERN DISTRICT OF FLORIDA
PENSACOLA DIVISION

THEODORE R. COMSTOCK,
    Plaintiff,

vs.                                        Case No. 3:08cv25/MCR/EMT

JOHN HOOBAN, et al.,
    Defendants.
_____/

## **ORDER**

        This cause is before the court on Plaintiff's civil rights complaint filed pursuant to 42 U.S.C. §1983 (Doc. 1).  Leave to proceed in forma pauperis has been granted (Doc. 8).

        From a review of the complaint, it is evident that the facts as presented fail to support a viable claim for relief under section 1983 as to the named Defendants.  Therefore, the court will allow Plaintiff an opportunity to clarify his allegations in an amended complaint.

        Plaintiff, an pre-trial detainee in the Bay County Jail, names the following three Defendants in this action:  John Hooban, a case manager with the Children's Home Society (CHS); Evelyn Jimenez, an employee of CHS; and Pamela Artlip, an investigator with the Florida Department of Children and Families (DCF) (Doc. 1 at 1–2).  Apparently, there is an ongoing child dependency case involving Plaintiff's three children (*see id.* at 5–6).  Plaintiff alleges that Defendant Jimenez filed a false affidavit with the Panama City Police alleging Plaintiff assaulted her on August 17, 2007 (*id*. at 5).  Plaintiff also alleges that on October 9, 2007, Defendants Hooban and Artlip conspired to knowingly file false reports with the child dependency court regarding Plaintiff's newborn son, resulting in the child's placement in protective custody (*id*. at 5–6).  Plaintiff states that at a child dependency hearing on December 4, 2007, the dependency court judge ordered Plaintiff to stay 1,000 feet from CHS (*id*. at 5).  Defendant Hooban filed an allegedly false affidavit with the Panama City Police stating that Plaintiff continuously called him on his cell phone and

threatened him, which resulted in a criminal charge of aggravated stalking (*id*. at 5). Additionally, a contempt hearing was held in the dependency court on December 11, 2007, for Plaintiff's alleged violation of the restraining order involving CHS (*id*.). At the contempt hearing, Plaintiff was arrested on the aggravated stalking charge, and the dependency judge commented that there may be a double jeopardy issue with the arrest (*id*. at 5–6). Plaintiff alleges that his three children have been abused and neglected by DCF as a result of Defendants filing false reports with the dependency court (*id*. at 6). Plaintiff additionally alleges Defendant Hooban sabotaged his drug tests, which were apparently order by the dependency court (*id*. at 5–6).

Plaintiff requests that Defendants be criminally charged with perjury and incarcerated (Doc. 1 at 6–7). He also seeks compensatory damages in the amount of six million dollars ($6,000,000.00) from DCF on behalf of himself and his family for physical abuse, mental abuse, sexual abuse, and neglect (*id*. at 7).

Initially, Plaintiff has no legal right to effect the criminal prosecution and incarceration of Defendants. "[A] private citizen lacks a judicially cognizable interest in the prosecution or nonprosecution of another." *See* Linda R.S. v. Richard D., 410 U.S. 614, 619, 93 S. Ct. 1146, 1149, 35 L. Ed. 2d 536 (1973); *see also* Cok v. Cosentino, 876 F.2d 1, 2 (1st Cir. 1989) (a private citizen has no authority to initiate a criminal prosecution); Sattler v. Johnson, 857 F.2d 224, 226–27 (4th Cir. 1988) (private citizen has no constitutional right to have other citizens, including state actors, criminally prosecuted). Furthermore, a public official or agency has no affirmative constitutional duty to a member of the public to investigate or intervene on an alleged crime. Wright v. City of Ozark, 715 F.2d 1513, 1516 (11th Cir.1983) (citation omitted); Gomez v. Whitney, 757 F.2d 1005, 1006 (9th Cir. 1985) (claim that police violated due process by failing to conduct adequate investigation into violent incident between two citizens failed to state civil rights claim unless there was another recognized constitutional right involved); Beard v. O'Neal, 728 F.2d 894, 899 (7th Cir. 1984). Therefore, Plaintiff will not accomplish his goal of criminal prosecution of Defendants by continuing with this civil rights action.

To the extent Plaintiff seeks this court's intervention in his ongoing criminal prosecution for the aggravated stalking charge on the ground that his prosecution violates double jeopardy principles, Plaintiff is advised that due to principles of comity announced in Younger v. Harris, 401

U.S. 37, 91 S. Ct. 746, 27 L. Ed. 2d 669 (1971), federal courts cannot intervene in ongoing criminal proceedings except in the most extraordinary circumstances and upon a clear showing of both great and immediate harm. *Id.*; *see* also Hicks v. Miranda, 422 U.S. 332, 348–50, 95 S. Ct. 2281, 2291–92, 45 L. Ed. 2d 223 (1975). The comity concern in this situation stems from the fact that the section 1983 action

> may also have a substantially disruptive effect upon contemporary state criminal proceedings, and may also undermine the integrity of the writ of habeas corpus. Where the federal court . . . would have to make rulings by virtue of which the validity of a conviction in contemporary state proceedings would be called into question, the potential for federal-state friction [would be] obvious. The federal ruling would embarrass, and could even intrude into, the state proceedings. Questions concerning the effect to be given the federal ruling in the state courts might be difficult ones, and could lead to delay, or even derailment of the course of the state action.

Guerro v. Mulhearn, 498 F.2d 1249, 1253 (1st Cir. 1974). In the instant case, Plaintiff does not allege the existence of extraordinary circumstances or that this court's failure to intervene will subject him to great and immediate harm. Therefore, to the extent Plaintiff seeks declaratory or injunctive relief with regard to an ongoing state criminal proceeding, his claim is subject to dismissal. Additionally, Plaintiff's claims for monetary relief would at least have to be stayed pending the outcome of the state criminal proceedings. *See* Quackenbush v. Allstate Ins. Co., 517 U.S. 706, 719–20, 116 S. Ct. 1712, 1722–23, 135 L. Ed. 2d 1 (1996); Deakins v. Monaghan, 484 U.S. 193, 201–02, 108 S. Ct. 523, 530, 98 L. Ed. 2d 529 (1987); Doby v. Strength, 758 F.2d 1405, 1406 (11th Cir. 1985).

Finally, to the extent Plaintiff seeks this court's review of or intervention in the child dependency proceedings, this court lacks jurisdiction to do so. The Rooker-Feldman doctrine places limits on the subject matter jurisdiction of federal district courts and courts of appeal over certain matters related to previous state court litigation. *See* Rooker v. Fidelity Trust Co., 263 U.S. 413, 415–16, 44 S. Ct. 149, 150, 68 L. Ed. 362 (1923); District of Columbia Court of Appeals v. Feldman, 460 U.S. 462, 476-82, 103 S. Ct. 1303, 1311–15, 75 L. Ed. 2d 206 (1983). The Eleventh Circuit has described the Rooker-Feldman doctrine as follows:

> The Rooker-Feldman doctrine provides that federal courts, other than the United States Supreme Court, have no authority to review the final judgments of state

courts. The doctrine extends not only to constitutional claims presented or adjudicated by a state court, but also to claims that are "inextricably intertwined" with a state court judgment. A federal claim is inextricably intertwined with a state court judgment if the federal claim succeeds only to the extent that the state court wrongly decided the issues before it.

Siegel v. LePore, 234 F.3d 1163, 1172 (11th Cir. 2000) (en banc) (citations and quotations omitted). The Eleventh Circuit has developed the following four criteria which must be satisfied for the Rooker-Feldman doctrine to bar federal court jurisdiction: "(1) the party in federal court is the same as the party in state court; (2) the prior state court ruling was a final or conclusive judgment on the merits; (3) the party seeking relief in federal court had a reasonable opportunity to raise its federal claims in the state court proceeding; and (4) the issue before the federal court was either adjudicated by the state court or was inextricably intertwined with the state court's judgment." Amos v. Glynn County Bd. of Tax Assessors, 347 F.3d 1249, 1265 n. 11 (11th Cir. 2003) (internal citations omitted).

Plaintiff appears to challenge the state dependency court's decision placing his children in the custody of DCF. The first two prongs of the Rooker-Feldman standard are satisfied because Plaintiff is a party to the child dependency proceedings, and the facts suggest there was a conclusive judgment on the merits concerning child custody. As to the third prong, Plaintiff does not allege, nor do the facts suggest, that he did not have a reasonable opportunity to raise any constitutional challenges in the dependency proceedings. Florida law permits constitutional challenges to orders of a dependency court to be brought in the dependency court, and those challenges are subject to review by the Florida District Courts of Appeals. *See, e.g.*, A.B. v. Florida Dep't of Children and Family Serv., 901 So.2d 324 (Fla. 3d DCA 2005) (review of order of dependency on claim that admission of testimony violated constitutional right to confrontation and cross-examination of accuser); J.H. v. Dep't of Children and Families, 890 So.2d 476 (Fla. 5th DCA 2004) (appeal from order of dependency on claim that trial court's treatment of arraignment hearing as disposition hearing violated procedural due process rights); In re J.P., 875 So.2d 715 (Fla. 2d DCA 2004) (review of order of dependency court on claim that removing children from custody of father and placing them in shelter violated due process as father was not given opportunity to present evidence and be heard); M.L.W. v. Dep't of Health and Rehabilitative Serv., 695 So.2d 724 (Fla. 1st DCA

1996) (due process requires fundamental fairness in juvenile dependency proceedings). Therefore, the third prong of the Rooker-Feldman doctrine appears to be satisfied.

As to the fourth prong, Plaintiff's claims are clearly "inextricably intertwined" with the state court judgment in the sense that "'the federal claim[s] succeed[ ] only to the extent that the state court wrongly decided the issues before it.'" Goodman ex rel. Goodman v. Sipos, 259 F.3d 1327, 1332 (11th Cir. 2001) (quoting Seigel, 234 F.3d at 1172). On three occasions the Eleventh Circuit has considered and applied the Rooker-Feldman doctrine in cases involving claims related to state child custody proceedings. *See* Goodman, *supra*; Liedel v. Juvenile Court of Madison County, Ala., 891 F.2d 1542 (11th Cir. 1990); Staley v. Ledbetter, 837 F.2d 1016 (11th Cir. 1988). In Staley, a former adoptive mother filed a civil rights action against the Georgia Commissioner of Human Resources seeking to challenge child custody determinations and termination of her parental rights on grounds of equal protection and due process violations. 837 F.2d at 1017. The plaintiff requested reinstatement of parental custody and psychiatric care at state expense for her children and herself. *Id.* The Eleventh Circuit determined that the plaintiff "in essence sought to reverse a state court's child custody determination" and held that:

> [N]o federal subject matter jurisdiction existed in this case. In effect, Staley seeks to challenge collaterally the state agency and court proceedings that terminated her parental rights. The federal courts are not a forum for appealing state court decisions.

*Id.* at 1017–18.

Similarly, in Goodman, a mother brought, on her own behalf and on behalf of her son, a § 1983 action against employees of the Georgia Department of Family and Children Services, seeking only damages for alleged violations of their constitutional rights in connection with the investigation and initiation of a state juvenile proceeding to remove the son from his mother's custody. 259 F.3d at 1328. The Goodmans raised the following constitutional claims: (1) protective services employees and a law enforcement officer violated their Fourth Amendment rights by unlawfully entering and searching their home without a warrant or consent, (2) a protective services employee submitted an inaccurate and untruthful affidavit to the juvenile court in support of an ex parte petition for custody of the child in violation of the Due Process Clause of the Fourteenth Amendment, and (3) the protective services employees committed an additional due

process violation by threatening a family friend with arrest if he did not return the child to protective services.

The Goodman court noted that Staley was an "easy case" for application of the Rooker-Feldman doctrine because it involved "far more direct attacks on the previous state court judgment" than the Goodman's claims; in fact, part of the relief sought in Staley was an injunction preventing enforcement of the state court judgment and returning custody to the aggrieved parent (the plaintiffs in both cases also sought relief in the form of damages), whereas the Goodmans did not seek injunctive relief that would prevent the enforcement of any child custody orders, they sought only damages for the constitutional violations they allegedly suffered. 259 F.3d at 1333. The Eleventh Circuit concluded that the Goodmans' claim contending that the protective services worker's affidavit was false and the state court's ex parte proceeding violated the plaintiffs' due process rights was barred because the state court decided to take custody of the child away from the mother only after finding the worker's affidavit to be credible and finding that the ex parte order was justified. *Id.* The Eleventh Circuit additionally determined that the Goodmans had a reasonable opportunity to present their constitutional claims during the state juvenile proceedings because state law permitted constitutional challenges to a juvenile court's orders to be brought in the juvenile court, and those challenges are subject to review by the state supreme court, and ultimately by the United States Supreme Court. The plaintiffs were both parties to the state court proceeding, and with the exception of the initial hearing on the ex parte petition to take custody, they were present and participated in the state court proceedings. Therefore, the plaintiffs had a reasonable opportunity to bring their constitutional challenges. *Id.*

The facts of the instant case are similar to Staley and Goodman. In the instant case, by claiming that Defendants falsified documents which formed the basis of the dependency court's orders, Plaintiff essentially challenges the validity of those orders. The granting of any relief sought by Plaintiff would call into question the correctness of the state dependency court's orders; indeed, if this court were now to hold that the Florida dependency court's orders regarding custody were unconstitutional, the court would "effectively nullify" the state court's judgment. *See* Incorvaia v. Incorvaia, 154 Fed. Appx. 127, 128 (11th Cir. 2005) (quoting Powell v. Powell, 80 F.3d 464, 467 (11th Cir. 1996) (holding that Rooker-Feldman barred "as applied" challenge to state court decision

to distribute a portion of husband's naval retirement pay to wife upon divorce)).  Accordingly, Plaintiff may not utilize this federal action to attempt to reverse the orders of the dependency court.

Plaintiff should carefully review the foregoing to determine whether he desires to proceed with this action.  If Plaintiff determines that he does not, he should file with the court a notice of voluntary dismissal.  If Plaintiff chooses to file an amended complaint, he must completely fill out a new civil rights complaint form, marking it "**Amended Complaint**."  Plaintiff must limit his allegations to claims related to the same basic incident or issue and name as Defendants only those persons who are responsible for the alleged constitutional violations.  Plaintiff must place their names in the style of the case on the first page of the civil rights complaint form, and include their addresses and employment positions in the "Parties" section of the form.  In the statement of facts, Plaintiff should clearly describe how each named Defendant is involved in each alleged constitutional violation, alleging the claims as to each Defendant in separately numbered paragraphs and including specific dates and times of the alleged unconstitutional acts.  If Plaintiff cannot state exactly how a particular Defendant harmed him, he should delete or drop that person as a Defendant from his complaint.  In the section entitled "Statement of Claim," Plaintiff must state what rights or statutes he contends have been violated, and he must provide support in the statement of facts for the claimed violations.  Plaintiff is advised that the amended complaint must contain all of his allegations because once an amended complaint is filed, all earlier complaints and filings are disregarded.  N.D. Fla. Loc. R. 15.1.

Accordingly, it is **ORDERED**:

1. The clerk of court is directed to forward to Plaintiff a civil rights complaint form for use by prisoners in actions under 42 U.S.C. § 1983.  This case number should be written on the form.

2. Within **THIRTY (30) DAYS** from the date of docketing of this order, Plaintiff shall file an amended civil rights complaint, which shall be typed or clearly written, submitted on the court form, and titled "Amended Complaint."  In the alternative, Plaintiff shall file a notice of voluntary dismissal within the same time period.

3. Failure to comply with this order may result in dismissal of this action.

**DONE AND ORDERED** this 11th day of February 2008.

/s/ *Elizabeth M. Timothy*
**ELIZABETH M. TIMOTHY**
**UNITED STATES MAGISTRATE JUDGE**